24-2485-cr
United States v. Woods

# United States Court of Appeals
# For the Second Circuit

August Term, 2024

(Argued: June 12, 2025 Decided: February 5, 2026)

Docket No. 24-2485-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

JONES J. WOODS,

*Defendant-Appellant*.

---

Before:

LOHIER, CARNEY, and PÉREZ, *Circuit Judges*.

In June 2023 the United States District Court for the Western District of New York found that defendant Jones J. Woods was incompetent to stand trial. If a criminal defendant is found incompetent to stand trial, the district court must order him hospitalized in federal custody for a "reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d)(1). For the criminal case to proceed, the court must then find that there exists a "substantial probability that in the foreseeable future" the defendant will be restored to competency. *Id.* And if the court makes that finding, it can order that the defendant remain in custodial hospitalization for "an additional reasonable period of time" until he becomes competent. *Id.* § 4241(d)(2)(A). But in the event the district court finds that the defendant likely *cannot* be restored to competency, the Government must then

decide whether to release the defendant or, if it believes that release would pose a danger to the community, seek the defendant's civil commitment in a suitable facility that can adequately treat his mental illness. *Id*. §§ 4241(d), 4246(a), 4248(a). Here, as the Government considered how to proceed, the District Court ordered Woods's custodial hospitalization for 45 days under 18 U.S.C. § 4247(b) after he had already been hospitalized for more than four months. This appeal raises two questions: (1) whether any challenge to the District Court's now-expired order extending Woods's hospitalization is moot; and (2) whether the District Court could prolong Woods's hospitalization for an additional reasonable period past the initially authorized four months while the Government weighed whether to seek his civil commitment.

We **AFFIRM** the District Court's order as authorized by 18 U.S.C. § 4241(d)(2)(B) insofar as it compelled Woods's continued hospitalization beyond the four-month period. Because we conclude that the remainder of Woods's challenges to the District Court's order are moot, the appeal is otherwise **DISMISSED**.

MARTIN J. VOGELBAUM, Assistant Federal Public Defender, Office of the Federal Public Defender for the Western District of New York, Buffalo, NY, *for Defendant-Appellant*.

SEAN C. ELDRIDGE, Assistant United States Attorney, *for* Michael DiGiacomo, United States Attorney for the Western District of New York, Rochester, NY, *for Appellee*.

LOHIER, *Circuit Judge*:

If a criminal defendant is found incompetent to stand trial, the district court must order him hospitalized in federal custody for a "reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d)(1). For the criminal case to

proceed, the court must then find that there exists a "substantial probability that in the foreseeable future" the defendant will be restored to competency. *Id.* And if the court makes that finding, it can order that the defendant remain in custodial hospitalization for "an additional reasonable period of time" until he becomes competent. *Id.* § 4241(d)(2)(A). But the Government also plays an important role in the event the district court finds that the defendant likely *cannot* be restored to competency. The Government must then decide whether to release the defendant or, if it believes that release would pose a danger to the community, to seek the defendant's civil commitment in a suitable facility that can adequately treat his mental illness. *See id*. §§ 4241(d), 4246(a), 4248(a).

Here, as the Government was considering its options, the District Court ordered that defendant Jones J. Woods be custodially hospitalized for 45 days after it found that Woods likely could not be restored to competency and Woods had already been hospitalized for more than four months. This appeal raises the question whether the District Court could prolong Woods's hospitalization for an additional reasonable period past the initially authorized four months while the Government weighed whether to seek his civil commitment.

We **AFFIRM** the District Court's order insofar as it ordered Woods's

continued hospitalization beyond the four-month period. Because we conclude that the remainder of Woods's challenges to the order are moot, the appeal is otherwise **DISMISSED**.

I

Woods was charged with depredation against federal property in violation of 18 U.S.C. § 1361 for throwing rocks at the windows of the United States Attorney's Office in Buffalo, New York in January 2023. On January 31, 2023, Woods entered an initial appearance before the Magistrate Judge in the United States District Court for the Western District of New York, but his erratic behavior during that and a later appearance prompted the court to order a psychiatric evaluation. After a hearing in June 2023, the court found Woods incompetent to stand trial and ordered him hospitalized in a suitable Bureau of Prisons ("BOP") facility for a period not to exceed four months to determine whether he could be restored to competency. *See id.* § 4241(d)(1). After delays that are not at issue on this appeal, Woods was finally hospitalized in January 2024 for evaluation at FMC Devens in Massachusetts.

Although Woods's four-month period of custodial hospitalization lapsed in May 2024, he remained in custody at FMC Devens. Some three months later,

in August 2024, after receiving an evaluation from an FMC Devens physician, the Magistrate Judge found that there was no substantial probability that Woods would be restored to competency and, over the objections of Woods's counsel, ordered that he remain hospitalized at FMC Devens for another 45 days under 18 U.S.C. § 4247(b) and also ordered the director of FMC Devens to evaluate whether Woods posed a danger to others. Woods appealed the Magistrate Judge's order to the District Court, which affirmed the order in its entirety on September 6, 2024.[1]

In late August 2024, with the Magistrate Judge's order still in effect, the Government filed a "certificate of dangerousness" as to Woods in the Western District of New York. Such a certificate reflects the Government's belief that a defendant who is otherwise poised to be released from federal detention is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* § 4246(a); *see also id.* § 4248(a). Filing the certificate automatically "stay[s] the release of the [defendant] pending [the] completion of" civil commitment procedures. *Id.* § 4246(a); *see also id.* § 4248(a).

[1] We refer to the Magistrate Judge's August order and the District Court's September affirmance collectively as "the August 2024 order" or "the District Court's order."

The Government's certificate of dangerousness ensured that Woods remained committed at FMC Devens even after the August 2024 order's 45-day extension of custodial hospitalization lapsed. Shortly after certifying that Woods continued to pose a danger, the Government filed a civil commitment petition against Woods in the District of Massachusetts. *See United States v. Woods*, No. 24-CV-11524, 2025 WL 1489979, at *2 (D. Mass. May 23, 2025). That action remains ongoing. On appeal to this Court, Woods challenges the District Court's statutory authority to enter the August 2024 order in the Western District of New York.

II

We first address whether Woods's challenge to the now-expired August 2024 order is moot in view of the fact that the Government completed its psychiatric evaluation of Woods for dangerousness and Woods, though still detained, is technically no longer subject to that order. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). As we explain below, we are persuaded that the appeal is moot only in part.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III [of the United States Constitution]—when the issues

presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). So a case on appeal is moot if the possibility of relief is "too remote and speculative to satisfy the case-or-controversy requirement of Article III." *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (cleaned up). But "the availability of a partial remedy is sufficient to prevent a case from being moot" even though that relief is less than "fully satisfactory." *Chafin v. Chafin*, 568 U.S. 165, 177 (2013) (cleaned up). An appeal is moot, in other words, only when it is "*impossible* for the court to grant any effectual relief whatever to a prevailing party." *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 778 F.3d 412, 416 (2d Cir. 2015) (emphasis added) (quotation marks omitted); *see Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012). For that reason, a defendant's appeal from an expired detention order remains a live case or controversy as long as "prevailing on appeal would relieve him of some concrete and identifiable collateral effect of that" order. *United States v. Hamdi*, 432 F.3d 115, 118 (2d Cir. 2005).

A

With these principles in mind, we conclude that Woods's appeal from the August 2024 order is moot insofar as the order authorized the Government to evaluate Woods for dangerousness. The Government completed its evaluation long ago, and Woods has not requested that the District Court order the Government to conduct a reevaluation. Woods cannot show that he would receive "any effectual relief" if we were to vacate this portion of the order. *Knox*, 567 U.S. at 307 (quotation marks omitted).

B

The District Court's order is not moot, however, insofar as it committed Woods to 45 additional days of custodial hospitalization after August 2. During that 45-day period, the Government initiated civil commitment proceedings against Woods in the District of Massachusetts pursuant to 18 U.S.C. § 4246(a). For that statute to apply, Woods must have been lawfully "committed to the custody of the Attorney General pursuant to [18 U.S.C. §] 4241(d)" at the time that the Government filed its petition in the District of Massachusetts. 18 U.S.C. § 4246(a)[2]; *see also id.* § 4248(a). Woods contends that this precondition was not

[2] 18 U.S.C. § 4246(a) provides in relevant part:

satisfied at the time the Government initiated civil commitment proceedings against him because the Western District of New York's August 2024 detention order is invalid.

In the District of Massachusetts, where Woods moved on that basis to dismiss as untimely the Government's petition to have him civilly committed, the Government did not dispute that it can initiate civil commitment proceedings only against a person who is already in lawful custody pursuant to 18 U.S.C. § 4241(d). *See Woods*, 2025 WL 1489979, at *4. But the Government requested that the District of Massachusetts hold Woods's motion in abeyance pending our

---

> **(a) Institution of Proceeding.—**If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, . . . he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

resolution of the validity of the August 2024 order in this appeal. *Id.* at *3. Because the legal basis for Woods's § 4241(d) detention was on appeal before this Court, the District of Massachusetts denied Woods's motion to dismiss the Government's petition but did so without prejudice to refiling the motion, depending on the outcome of this appeal. *Id.* at *4, *6. The District of Massachusetts described its reasoning as follows:

> Between May 16, 2024, and September 16, 2024, Woods was committed pursuant to orders from the Western District of New York. The court denies consideration of the motion to dismiss the petition as to Woods'[s] commitment during that period, where the matter is pending in the Second Circuit. If the Second Circuit affirms those orders, there will be no further matter for this court to consider as to that period. If the Second Circuit vacates those orders, Woods may renew his motion to dismiss based on his detention prior to September 16, 2024.

*Id.* at *4.

As this complicated set of proceedings in competing fora shows, the federal civil commitment scheme contemplates a role for both the district court that initially "ordered the commitment" of the defendant pending the initiation of civil commitment proceedings—here, the Western District of New York—and "the court for the district in which the [defendant] is confined" pursuant to that order—here, the District of Massachusetts. 18 U.S.C. § 4246(a). The latter court

typically eventually presides over the defendant's civil commitment proceedings.

Which court, though, is best positioned to evaluate whether the timing deadlines of § 4241(d) and § 4246(a) were violated?

Consider, as in this case, the defendant who is subject to district court civil commitment proceedings in Circuit B but first challenges his detention order on direct, expedited appeal in Circuit A. By the time Circuit A hears the appeal, the detention order will likely have expired and the defendant's release automatically "stay[ed]" pending the completion of civil commitment proceedings in Circuit B. *See id.* The stay may compel Circuit A to dismiss the appeal as moot on the ground that a "new statutory bas[i]s superseded the original bas[i]s for [the] order[] challenged on appeal," such that vacatur would not lead to the defendant's release. *United States v. Alhindi*, 124 F.4th 869, 874 (11th Cir. 2024); *see id.* at 875 ("Because Alhindi's current commitment is authorized by section 4246, not section 4241(d), this appeal is moot.").

Or, flipping the storyline, suppose the defendant challenges the lawfulness of his detention order in the district court in Circuit B that presides over his civil commitment proceedings, rather than on appeal to Circuit A from the district court that entered the order—in effect, an improper horizontal appeal from one

district court to another. *See Klayman v. Rao*, 49 F.4th 550, 552–53 (D.C. Cir. 2022). Circuit B may then conclude that the defendant "waived his right to challenge the alleged[ly]" unlawful order because he failed to raise his argument "at the proper time and place"—that is, by challenging the order on appeal to Circuit A. *United States v. Ryan*, 52 F.4th 719, 722–23 (8th Cir. 2022).

Both scenarios illustrate the vexing procedural dilemma that a defendant in Woods's position faces. Whether the District of Massachusetts decides to dismiss the Government's civil commitment proceedings as untimely depends on this Court's resolution of the lawfulness of the August 2024 order entered in the Western District of New York. Yet whether the appeal in this Court remains alive or is moot depends on the likelihood that the District of Massachusetts will dismiss the civil commitment proceedings if we find the order to be invalid. An added complication is that Woods raised his challenge to the timeliness of the proceedings in *both* this Court and the District of Massachusetts. As the District of Massachusetts's order suggests, both courts facing that situation risk engaging in a never-ending "gastonette," each "awaiting a first move by the other," while leaving Woods "consign[ed] . . . to a jurisdictional limbo." *In re McLean Indus., Inc.*, 857 F.2d 88, 90 (2d Cir. 1988) (Newman, *J.*).

Even with these complexities, the circumstances of this case persuade us that the appeal is not moot. If we were to vacate the August 2024 order, the District of Massachusetts has already telegraphed that it will grant Woods leave to refile his motion to dismiss the Government's civil commitment petition as untimely. *See Woods*, 2025 WL 1489979, at *4. To be sure, Woods's motion in Massachusetts, "like any" motion, "*might* prove fruitless" on the merits. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 463 (2017). "[B]ut the mere *possibility* of failure does not eliminate the value of the [motion] or [Woods's] injury in being unable to bring it." *Id.* at 463–64. So we cannot say that it is "impossible" for us to "grant any effectual relief whatever" to Woods. *Knox*, 567 U.S. at 307 (quotation marks omitted). To the contrary, the appeal of an expired detention order survives as long as vacatur could partially redress an injury by creating an opportunity for relief in another court. *See, e.g.*, *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 324 (2d Cir. 2020) (challenge to state civil commitment orders was not moot because vacatur would provide opportunity to challenge state conditions of release); *see also Hamdi*, 432 F.3d at 120 (appeal of expired sentence was not moot because "a sentence reduction presents a reasonable and sufficient probability of affecting a favorable outcome

in a future application for . . . relief" under § 212(d)(3) of the Immigration and Nationality Act, which allows for re-entry into the United States at the Attorney General's discretion).

For these reasons, we conclude that the appeal is not moot insofar as it challenges the District Court's order committing Woods to 45 additional days of custodial hospitalization.

## III

Turning to the merits of that challenge on appeal before us, Woods's sole argument is that a district court has no statutory authority to order his continued custodial hospitalization (in Woods's case, for 45 days) if, as here, the defendant's initial four-month period of custodial hospitalization has lapsed without a finding of a substantial probability that he can be restored to competency in the foreseeable future, and the Government has not yet filed a certificate of dangerousness. We disagree and hold that the complex web of statutory provisions in 18 U.S.C. §§ 4241(d), 4246, and 4247 permits a district court to order a defendant's continued commitment after an initial four-month

period of custodial hospitalization has lapsed, even if it finds that there is no substantial probability that the defendant would be restored to competency.

Under § 4241(d)(1), a defendant must be committed to BOP custody for a "reasonable" period of time after a district court finds him incompetent to stand trial. 18 U.S.C. § 4241(d)(1). Before the criminal case can proceed, the court must determine that there exists "a substantial probability that in the foreseeable future" the defendant will be restored to competency. *Id.* The statute limits this initial period of custodial hospitalization to "four months." *Id.*

As the first four-month period expires, however, § 4241(d)(2) provides that the district court may commit the defendant for "an additional reasonable period of time until" one of two events takes place: (A) "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward," or (B) "the pending charges against him are disposed of according to law," "whichever is earlier." *Id.* §§ 4241(d)(2)(A), (B). In *United States v. Magassouba*, we explained that § 4241(d)(2)(B) "is most obviously construed to permit additional custodial hospitalization of incompetent defendants who are not expected to regain

competency until the criminal charges against them are dismissed in favor of civil commitment proceedings." 544 F.3d 387, 405 n.9 (2d Cir. 2008). So where, as here, a defendant's charges have not been "disposed of according to law"[3] and the district court determines that there is no substantial probability that the defendant will regain competency to stand trial in the foreseeable future, § 4241(d)(2)(B) authorizes the defendant's continued custodial hospitalization for "an additional reasonable period of time" to permit the Government to decide whether to seek his civil commitment. 18 U.S.C. § 4241(d)(2)(B); *see also United States v. Wayda*, 966 F.3d 294, 305 (4th Cir. 2020).

To be sure, the District Court did not rely on § 4241(d)(2)(B) when it entered its August 2024 order. It relied instead on § 4247(b), which permits a court, "for the purposes of an examination pursuant to an order under . . . [§ 4246]," to commit a defendant "for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility." 18 U.S.C. § 4247(b). That statutory provision, however, applies only *after* the government has filed a certificate of dangerousness, *see* 18 U.S.C. § 4246(a), and the government had not yet done so when the Magistrate Judge

[3] Woods's charges had not yet been dismissed at the time of the District Court's August 2024 order.

entered its order affirmed by the District Court. But we affirm the District Court's order on the basis that the District Court had the authority to continue Woods's hospitalization under § 4241(d)(2)(B). *See Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 148 (2d Cir. 2020).

Our interpretation of § 4241(d)(2)(A) and § 4241(d)(2)(B) fits neatly within the constitutional limits identified in *Jackson v. Indiana*, 406 U.S. 715 (1972). In *Jackson*, the Supreme Court held that due process prohibited the indefinite detention of a defendant "on the ground of incompetency alone," but permitted his continued detention for no more than a "reasonable period of time" as

> necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the [Government] must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

*Id.* at 738. Congress enacted § 4241 specifically "in response to the due process concerns identified in *Jackson*." *United States v. Brennan*, 928 F.3d 210, 214 (2d Cir. 2019) (quotation marks omitted). Section 4241(d)(2)(B) accordingly offers the Government a reasonable period to decide whether to initiate civil commitment

proceedings against a defendant whose incompetency establishes the lack of substantial probability "that he will ever be able to participate fully in a trial." *Jackson*, 406 U.S. at 739.

Urging a contrary conclusion, Woods contends that the District Court relinquished its statutory authority to order his continued custodial hospitalization, regardless of its restorability finding, when it failed to act within the initial four-month period of custodial hospitalization contemplated by § 4241(d)(1). We cannot square that argument with our holding in *Magassouba* that § 4241 "does not affirmatively require a district court to issue a § 4241(d)(2) commitment order before the expiration of [the] § 4241(d)(1) hospitalization order, nor does it strip a district court of the authority to do so thereafter." *Magassouba*, 544 F.3d at 409. Although *Magassouba* related to an order entered pursuant to § 4241(d)(2)(A), its rationale applies with equal force to commitment orders entered under § 4241(d)(2)(B).

IV

To be clear, today we hold only that § 4241(d) authorizes district courts to subject a defendant to an additional reasonable period of custodial hospitalization after the initial four-month hospitalization period and after

finding that there is no substantial probability that he will be restored to competency. Because Woods did not raise further issues on appeal, we do not address whether Woods's entire period of pretrial custody can be cast as "reasonable" within the meaning of § 4241(d) or the Due Process Clause. Nor do we resolve whether the 45 day-period authorized in this case itself reflects a "reasonable" period of continued hospitalization within the meaning of § 4241(d)(2).

Finally, we expect that "when dealing with incompetent defendants, district courts will, in fact, generally strive to avoid breaks in custodial hospitalization by entering § 4241(d)(2) orders, whenever possible, before the expiration of § 4241(d)(1) orders." *Magassouba*, 544 F.3d at 409. As for the Government's obligations, we agree with the following observation of the Fourth Circuit:

> When the government has in its custody an individual whose incapacity renders him unable to stand trial and therefore eventually subject either to possible release or civil commitment, we expect the government to "strive to certify" individuals in a time frame that eliminates or at least minimizes the time spent as an incompetent, unrestorable person waiting for a § [4246 or §] 4248 determination. This principle aligns with the § 4241(d) commitment provisions because it suggests a limiting principle for the § 4241(d)(2)(B) "until the pending charges against him are disposed of according to law" period.

> That "reasonable period of time" should not be so short as to not accord the government reasonable time to seek and file certification of a person pursuant to [§] 4246 . . ., but it should only be so long as to allow for reasonable explainable administrative delays in that certification process.

*Wayda*, 966 F.3d at 308 (cleaned up).

We have considered Woods's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the District Court's order insofar as it committed Woods to custodial hospitalization for 45 days, and we otherwise **DISMISS** the appeal.